# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| RONALD L. BRANTLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.:  3:09-CV-470 |
| | )  (VARLAN/SHIRLEY) |
| THE PEPSI BOTTLING GROUP, INC., and | ) |
| SEDGWICK CMS CLAIMS ADMINISTRATOR, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This civil action is before the Court on defendants' Motion for Entry of Judgment [Doc. 21]. Plaintiff has filed a response in opposition to this motion [Doc. 23]. Defendants have filed a reply to the response [Doc. 24].

This civil action is also before the Court on plaintiff's Motion for Judgment on the Administrative Record [Doc. 25]. Defendants have filed responses to this motion [Docs. 27, 28]. Plaintiff has filed replies to the responses [Docs. 29, 30].

The Court has carefully considered the parties' filings in light of the administrative record and the applicable law. For the reasons that follow, plaintiff's motion for judgment on the administrative record will be denied. Defendants' motion for entry of judgment will be granted. This case will be dismissed.

# I.      Standard of Review

This is an ERISA case.  "[T]he summary judgment procedures set forth in [Federal] Rule [of Civil Procedure] 56 are inapposite to ERISA actions and thus should not be utilized in their disposition."  *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring); *see also Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x 304, 306 (6th Cir. 2006) ("Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits . . . because the district court is limited to the evidence before the plan administrator at the time of its decision . . . .").  In resolving these cases, a district court should instead employ the following steps in adjudicating an ERISA action:

1.      As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2.      The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

*Wilkins*, 150 F.3d at 619 (Gilman, J., concurring).[1]

---

[1] In *Wilkins*, the Sixth Circuit affirmed the district court's grant of summary judgment in favor of the defendants.  *Wilkins*, 150 F.3d at 611.  Judges Gilman and Ryan concurred in the result, but wrote separately to explain their misgivings about the application of either a bench trial standard or a summary judgment standard to resolve ERISA actions.  *Id.* at 618-19 (Gilman, J., concurring). Their "suggested guidelines" for resolving these actions, reproduced above, thus represent the appropriate standard in the Sixth Circuit for adjudicating an ERISA case.

"Under *Wilkins*, this Court has two possible standards of review." *Gibson v. Prudential Ins. Co. of Am.*, 513 F. Supp. 2d 950, 956 (E.D. Tenn. 2007). "If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the plan in question, a court is required to undertake a *de novo* review of the administrators' decision. *Id.* "[W]here a benefits plan vests discretion with the administrators, a court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious." *Id.*

The benefits plan in this case–the Long Term Disability Plan (the "LTD Plan"), described *infra* Part II–vests discretion with the plan's administrator–defendant Sedgwick CMS Claims Administrator ("Sedgwick")–to determine the amount of benefits payable under the plan. *See* Doc. 1-2, p. 55 ("[Sedgwick] shall have such powers and duties as may be necessary to discharge its functions including: (1) To exercise its discretionary authority to determine the amount, manner and time of payment of any benefits, and to make determinations with respect to reimbursements of the [LTD] Plan . . . ."). This Court may therefore only disturb Sedgwick's benefits determination in this case if it finds the basis of the determination to be arbitrary and capricious. "Under [this] standard, [the Court] will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

## II.    Findings of Fact

Plaintiff Ronald L. Brantley was at one time an employee of defendant The Pepsi Bottling Group, Inc. ("PBG") [Doc. 8, ¶ 2]. Plaintiff alleges that he was injured on or about February 1, 2005 in connection with that employment [Doc. 1-2, ¶ 2; Doc. 8, ¶ 2]. Plaintiff alleges that he returned to his employment with PBG on or about June 14, 2005 [Doc. 1-2, ¶ 2]. Plaintiff further alleges that he suffered additional injuries in connection with his employment in or about August 2005 [*Id.*]. Plaintiff was thereafter diagnosed with bilateral epicondylitis [Doc. 8, ¶ 2].

Plaintiff is a participant in PBG's LTD Plan [*Id.*]. Plaintiff qualified for benefits under the LTD Plan as a result of the injuries described above, and began receiving benefits in 2006 under the LTD Plan in the amount of $1,000.00 per month [Doc. 8, ¶ 5; Doc. 21-2; Doc. 28]. Prior to receiving these benefits, plaintiff signed a Right of Reimbursement Agreement (the "ROR") [*see* Doc. 23]. The ROR provided that:

> In connection with an illness or injury, I have applied for plan benefits. In return for payment of these benefits, if . . . payments for the same illness or injury are received, I acknowledge that I am obligated to reimburse the plan, as stated in the plan, up to 100%, or to the full extent of any net recovery.

[Doc. 21-2, p. 92].

At the same time that he applied for and received disability benefits under the LTD Plan, plaintiff filed a claim for workers' compensation in Tennessee state court seeking recovery for the injuries that gave rise to his claim under the LTD Plan [*see* Doc. 22]. On June 18, 2007, the Chancery Court for Union County, Tennessee approved a workers'

compensation settlement entered into among plaintiff, PBG, Old Republic Insurance Company, the State of Tennessee, and Paul G. Summers, the Attorney General for the State of Tennessee [*see* Doc. 1-2, pp. 80-84]. In a "full, final, and complete settlement of all claims of [plaintiff] as a result of the accidents he sustained on or about February 1, 2005, June 14, 2005 and October, 2005," plaintiff was awarded a lump sum settlement of $35,095.34 [*Id.*, p. 82].[2]

Under the terms of the settlement, plaintiff's lump sum benefits were to be "spread out over his actuarial life" [Doc. 1-2, p. 82]. Using actuarial tables, the Chancery Court projected plaintiff's life expectancy at 483 months from the date of his first injury [*Id.*]. Dividing this lump sum by 483 months, the Chancery Court thus calculated that plaintiff was entitled under the settlement to $72.66 per month for the remainder of his life [*Id.*].[3] The Chancery Court further found that "the set off for social security or other disability benefits shall be $72.66 per month" [Doc. 1-2, p. 82].

---

[2] Plaintiff was initially awarded $45,250.00, but after deducting for attorney's fees and costs, the court ultimately awarded plaintiff $35,095.34 [*see* Doc. 1-2, p. 82].

[3] The Court notes that the terms of the workers' compensation settlement are somewhat ambiguous with respect to how this settlement has been paid out to plaintiff. Paragraph 5 of the settlement provides that "the payment . . . shall be paid in an uncommuted lump sum settlement" [*see* Doc. 1-2, p. 81; *see also* Doc. 21-2, p. 9 ("Please be advised that [Sedgwick is] reducing [plaintiff's] LTD benefits as he has received a lump sum settlement from worker's compensation . . . [Plaintiff] has received the entire amount of the settlement upfront.")]. But paragraph 10 of the workers' compensation settlement provides that "the payment of Plaintiff's lump sum settlement shall . . . be spread out over his actuarial life . . . which would represent the amount of $72.66 per month for the remainder of the Plaintiff's life" [*see* Doc. 1-2, p. 82]. In any event, the total dollar amount that plaintiff was awarded under the workers' compensation settlement–$35,095.34–is not ambiguous. The Court repeatedly refers to that figure in its analysis.

The LTD Plan provides that a "Participant's LTD Benefits for a month . . . shall be reduced by the sum of the other income benefits that are payable to the Participant for such month" [*Id.*, p. 32]. The LTD Plan further provides that a "Participant's other income benefits shall include . . . Workers' Compensation and other similar disability payments required by law including without limitation . . . compromise and release settlements . . . ." [*Id.*, p. 33]. The LTD Plan also provides that "[w]henever a third party is legally responsible or agrees to compensate the Participant, by settlement . . . in connection with an occurrence that directly or indirectly gives rise, whether in whole or in part, to the Total Disability of the Participant, the Plan will be entitled to reimbursement . . . ." [*Id.*, p. 47]. Such recovery "shall be applied . . . to reimburse the Plan for any Plan benefits previously paid to or on behalf of the Participant . . . ." [*Id.*]. The LTD Plan provides finally that "current LTD Benefits may be reduced (in whole or in part) at any time to recover any overpayment" [*Id.*, p. 46].

Sedgwick, as noted, is the claims administrator for the LTD Plan [Doc. 8, ¶ 2]. When Sedgwick was notified of plaintiff's workers' compensation settlement, Sedgwick reduced plaintiff's benefits under the LTD Plan [*Id.*, ¶ 10]. Rather than cap the offset at $72.66 per month, however, Sedgwick "has offset the entirety of [plaintiff's] monthly benefit"–$1,000.00 per month–"because of the Workers' Compensation Settlement so that [plaintiff] has received zero monthly LTD Plan benefits since mid June 2007" [Doc. 22]. "Sedgwick has and intends to continue suspending those payment[s] for 35+ months before resuming payments to [plaintiff] in order to offset the $35,095.34 that [plaintiff] received on

his Workers' Compensation claim" [Doc. 28]. Plaintiff argues under several different theories that Sedgwick ought to be precluded from administering the LTD Plan in this way.

## III. Conclusions of Law

Defendants have moved for entry of judgment in this case. They advance two arguments in support of that motion: that Sedgwick's benefits determination was not arbitrary and capricious, and that the workers' compensation settlement agreement into which plaintiff entered places no limits on Sedgwick's administration of the LTD Plan [*see* Doc. 22].

Plaintiff rejects these arguments, and moves for judgment on the administrative record. He contends that the workers' compensation settlement trumps the terms of the LTD Plan; that defendants are equitably and promissorily estopped from recouping LTD benefits as they have done in this case; and that defendants breached a fiduciary duty they owed to him [*see* Doc. 23]. Plaintiff also contends that this Court lacks jurisdiction to hear defendants' counterclaims for recovery of the overpayment in this case [*see id.*]. Plaintiff finally contends that defendants have dealt arbitrarily, capriciously, and in bad faith with respect to his vocational rehabilitation efforts [*see id.*].[4]

The Court first considers whether Sedgwick's decision to offset the entirety of plaintiff's monthly benefits under the LTD Plan was arbitrary and capricious. It then

---

[4] Plaintiff raises the same arguments in his response in opposition to defendants' motion for entry of judgment as he does in his motion for judgment on the administrative record [*compare* Doc. 23 *with* Doc. 25].

considers whether the workers' compensation settlement places any limits on Sedgwick's administration of the LTD Plan. The Court finally addresses plaintiff's estoppel, jurisdictional, and vocational rehabilitation arguments.

## A.     Whether Sedgwick's Administration of the LTD Plan was Arbitrary and Capricious

As noted, Sedgwick argues that its administration of the LTD Plan was not arbitrary and capricious, and that it is entitled to entry of judgment in this case. In support of this argument, Sedgwick contends that, by halting monthly payments to plaintiff in full, it was merely enforcing the express and agreed-upon terms of the LTD Plan [*see* Doc. 22]. Sedgwick contends further that it had a fiduciary duty to plan participants and beneficiaries to enforce the terms of the LTD Plan as it did [*see id.*].

The Court agrees with Sedgwick. 29 U.S.C. § 1104(a)(1)(B) provides that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

Were Sedgwick to administer the LTD Plan as plaintiff contends it must, and recover only $72.66 per month of the principal amount of $35,095.34 to which it is entitled, it would take the LTD Plan 483 months to recover the principal amount [*see* Doc. 22]. As Sedgwick points out, however, plaintiff may not receive monthly payments under the LTD Plan beyond the age of 65 [*see id.*]. Plaintiff will reach the age of 65 in approximately 216 months [*see id.*]. Thus, as Sedgwick argues, if Sedgwick "recovers $72.66 for each of those 216 months,

it will recover only $15,694.56 of the $35,095.34 it is entitled to recover" [*see id.*]. The Court thus finds, as defendants argue, that a "prudent man . . . presented with the opportunity to recover money owed to him today or to delay [or partially foreclose] recovery . . . would no doubt collect his money today" by withholding all of plaintiff's monthly benefits until defendants recover the full $35,095.34 plaintiff obtained in the workers' compensation settlement [*see* Doc. 22].[5] The Court holds on this basis that Sedgwick's determination to withhold plaintiff's benefits as it did in this case was not arbitrary and capricious.[6]

The Court now considers whether the terms of the workers' compensation settlement limit the manner in which Sedgwick is able to administer the LTD Plan in this case.

## B.    Whether the Workers' Compensation Settlement Limits Sedgwick's Administration of the LTD Plan

Defendants contend that the LTD Plan preempts the workers' compensation settlement in this case, and that the terms of the settlement therefore cannot limit the manner

---

[5] The Court notes that plaintiff does not dispute that a "reasonable and prudent man" would pursue recovery in this manner. *See* Doc. 23 ("[Plaintiff] agrees that the bare terms of the LTD Plan, standing alone, would require more than [the] $72.66 offset mandated by the Workers' Compensation Order. [Plaintiff] agrees as well that '[a]ny reasonable and prudent man, if presented with the opportunity to recover money owed to him today or to delay recovery . . . would no doubt collect his money today.' Plaintiff . . . agrees . . . [that] it would indeed 'take the LTD Plan 483 months to recover the principal amount of $35,095.34.'") (internal citations omitted). As discussed *infra* Part III.B, however, plaintiff contends that the terms of the workers' compensation settlement prohibit Sedgwick from administering the LTD Plan in this way.

[6] The Court also notes approvingly of defendants' point that "when one participant takes or keeps more LTD Plan benefits than he is entitled to take or keep, it is to the detriment of all other participants" [*see* Doc. 22]. The Court thus agrees that "[n]o fiduciary could knowingly pursue a course that permitted one participant to recover an undeserved windfall to the detriment of all other plan participants" [*see id.*].

in which Sedgwick is able to administer the LTD Plan [*see id.*].  Plaintiff disagrees [*see* Doc. 23].

The Court again agrees with defendants.  The provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).[7]  "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  *Id.* § 1144(c).  The Supreme Court recently considered the effect of state court filings on the administration of ERISA plans in *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865 (2009).  *Kennedy* is instructive in resolving the issue presently before this Court.

The decedent in *Kennedy*, William Kennedy, worked for E. I. DuPont de Nemours & Company, and was a participant in its savings and investment plan (the "SIP").  *Id.* at 868.  In 1971, William married Liv Kennedy; in 1974, he signed a form designating Liv to take benefits under the SIP upon his death.  *Id.* at 869.  William and Liv divorced in 1994.  *Id.* The state divorce decree provided in part that Liv would be "divested of all right, title, interest, and claim in and to . . . [a]ny and all sums . . . the proceeds [from], and any other rights related to any . . . retirement plan, pension plan, or like benefit program existing by reason of [William's] past or present or future employment."  *Id.*  William did not execute any plan documents removing Liv as the SIP beneficiary, however.  *Id.*

---

[7] The exemptions listed in 29 U.S.C. § 1003(b) do not apply to the plan at issue in this case. *See* 29 U.S.C. § 1003(b).

This failure to remove Liv as the SIP beneficiary proved critical. William died in 2001, at which point the SIP administrator–pursuant to the beneficiary designation William had executed in 1974–paid $400,000.00 to Liv. *Id.* William's estate sued DuPont and the SIP administrator to recover these funds. *Id.* The Court found for DuPont and the SIP administrator, explaining that while "[t]he plan provided an easy way for William to change the [beneficiary] designation," "for whatever reason he did not [change it]." *Id.* at 877. Resting upon the "straightforward rule of hewing to the directives of the plan documents," the Court found no error in the SIP administrator's disbursement of the plan balance as directed in the 1974 beneficiary designation. *Id.* at 875. The Court noted further that a holding to the contrary would result in "[p]lan administrators . . .be[ing] forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits,'" *id.* at 876 (quoting *Altobelli v. IBM Corp.*, 77 F.3d 78, 82-83 (4th Cir. 1996) (Wilkinson, C.J., dissenting)), and "be drawn into litigation . . . over the meaning and enforceability of" state court filings as they relate to the administration of ERISA plans. *Kennedy*, 129 S. Ct. at 876.

The logic underpinning *Kennedy's* refusal to permit a state divorce decree to modify the terms of a savings and investment plan applies in equal force to the facts of the present case. Accepting plaintiff's argument that the terms of the workers' compensation settlement in this case cap the offset at $72.66 per month would amount to a modification of the terms of the LTD Plan by extrinsic documents in a manner that *Kennedy* explicitly rejected. The Court thus holds that the terms of the workers' compensation settlement in this case cannot

restrict the manner in which Sedgwick administers the LTD Plan. *See McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir. 1990) ("ERISA plans are to be administered according to their controlling documents."); *see also Prudential Ins. Co. of Am. v. Pryor*, 336 F. App'x 232, 234 (3d Cir. 2009) (internal quotations omitted) ("Administrators of ERISA plans must manage them in accordance with the documents and instruments governing them."); *In re Radcliffe*, 563 F.3d 627, 633 (7th Cir. 2009) ("Under *Kennedy*, the administrator is obligated to pay . . . benefits in conformity with plan documents without resort to external documents . . . .").

The Court further holds that the Chancery Court could not have rewritten the terms of the LTD Plan even if it had intended to do so by signing off on the workers' compensation settlement. "[P]lan documents and [summary plan descriptions] exclusively govern an employer's obligations under ERISA plans." *Sprague v. GMC*, 133 F.3d 388, 402 (6th Cir. 1998). The amendment of an ERISA plan by entry of a workers' compensation settlement, as plaintiff believes this Court should ratify, is a practice that is disfavored–if not impermissible–in the Sixth Circuit. *See id.* at 403 ("For [the court] to sanction informal 'plans' or plan 'amendments'–whether oral or written–would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place."); *see also Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 489 (2d Cir. 1988) ("[A]ltering a . . . benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA."). The Court thus rejects plaintiff's argument that the workers'

12

compensation settlement limits the manner in which Sedgwick may administer the LTD Plan in this case.

The Court now considers plaintiff's estoppel, jurisdictional, and vocational rehabilitation arguments.

### C.    Plaintiff's Arguments

Plaintiff advances several arguments in support of his position that Sedgwick is precluded from offsetting his award under the LTD Plan by more than $72.66 per month. He contends that defendants are equitably and promissorily estopped from offsetting his LTD Plan benefits in this way [*see* Doc. 23]. He contends that defendants breached a duty of good faith to him in administering the LTD Plan as they did [*see id.*]. He contends that this Court lacks jurisdiction to hear defendants' counterclaims for recovery of the overpayment in this case [*see id.*]. And he contends, finally, that defendants have dealt arbitrarily, capriciously, and in bad faith with respect to his vocational rehabilitation efforts [*see id.*]. The Court considers these arguments below.

### 1.    Equitable and Promissory Estoppel

Plaintiff first contends that, "[h]aving agreed as part of [plaintiff's] workers' compensation settlement to cap the monthly offset at $72.66 per month, defendants are now equitably and promissorily estopped to renounce that settlement limitation and to take all of [plaintiff's] LTD [Plan] benefits in an attempt to recoup the money paid out in the settlement" [*Id.*]. The Court disagrees. First, as plaintiff points out, while PBG was a party

to the workers' compensation settlement, Sedgwick was not [*see* Doc. 1-2, pp. 80-83]. Sedgwick therefore cannot be bound by the terms of that settlement.

Second, while PBG was a party to the settlement, it was a party in its capacity as an employer only; it was not a party to the settlement in its ERISA capacity. "An employer that also acts as a plan administrator is said to wear 'two hats,' and '[o]nly when the employer acts in its fiduciary capacity must it comply with ERISA's fiduciary duties." *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998) (citing *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995)). "[E]mployer actions that constitute 'managing' or 'administering' a plan" are deemed "fiduciary acts" while "those [actions] that are said to constitute merely 'business decisions' that have an effect on an ERISA plan" are not deemed fiduciary acts. *Sengpiel*, 156 F.3d at 665. Thus, because PBG was not a party to the settlement in its ERISA capacity, it owes no duty to plaintiff under ERISA, and is not estopped from offsetting his LTD Plan benefits in an amount greater than that set forth under the settlement. The Court rejects plaintiff's estoppel arguments on this basis.

The Court now considers plaintiff's good faith argument.

### 2. Good Faith

Plaintiff next contends that defendants owed him a duty of honesty and good faith in administering the LTD Plan, and that defendants breached this duty by "ignoring existing contracts entered into and promises made by the creator of the LTD Plan [that Sedgwick] was administering" [Doc. 23]. He also contends that Sedgwick's "act of ignoring the plain words

of the Workers' Compensation Order and taking the whole of [his] benefit entitlement . . .

constitute[] a total absence of honesty and good faith" [*Id.*].

The Court disagrees. As an initial matter, and for the reasons already stated *supra* Part

III.A, this Court finds that Sedgwick acted as a prudent man would in administering the LTD

Plan in this case. The Court notes further that the ERISA statute "contemplates that breaches

of fiduciary duty injure the plan," rather than individual beneficiaries, and that "ERISA [thus]

does not permit recovery by an individual who claims a breach of fiduciary duty." *Loren v.*

*Blue Cross & Blue Shield*, 505 F.3d 598, 608 (6th Cir. 2007); *Kuper v. Iovenko*, 66 F.3d

1447, 1452 (6th Cir. 1995). Sedgwick thus owed no duty to plaintiff; in the absence of such

a duty, no breach can exist.

Furthermore, and as defendants correctly argue, "[n]o fiduciary could knowingly

pursue a course that permitted one participant to recover an undeserved windfall to the

detriment of all other plan participants" without compromising its obligation to "discharge

[its] duties with respect to a plan solely in the interest of the participants and beneficiaries

and for the exclusive purpose of providing benefits to participants and their beneficiaries"

[*see* Doc. 22]; *see also* 29 U.S.C. § 1104(a)(1)(A)(i). The Court thus finds no duty to

plaintiff and no breach of that duty as a matter of law.

The Court next considers the counterclaims defendants have brought in this case.

### 3.    Defendants' Counterclaims

Defendants, having filed a motion for entry of judgment, also bring three

counterclaims in their answer to plaintiff's complaint [*see* Doc. 8]. These include a

counterclaim pursuant to 29 U.S.C. § 1132(a)(3) seeking imposition of an equitable lien, restitution, and a constructive trust; a counterclaim pursuant to 29 U.S.C. §§ 1132(a)(2) and 1104 for breach of fiduciary duty; and a counterclaim pursuant to federal common law for recovery of an overpayment made to plaintiff [*Id.*, ¶¶ 6-30].  Defendants also ask for an award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) [*Id.*, ¶¶ 17, 24].  Plaintiff contends that this Court lacks jurisdiction to consider defendants' counterclaims [*see* Doc. 23].  The Court considers these issues below.  Finding that this Court has jurisdiction to hear defendants' counterclaims, the Court then considers the merits of those counterclaims.  It then considers the attorney's fees question.

### a.    Jurisdiction Over Defendants' Counterclaims

As noted, plaintiff contends that this Court lacks jurisdiction to hear defendants' counterclaims.  Plaintiff relies on *Lynch v. Ford Motor Co.*, No. 3:05-0955, 2007 WL 622485, at *3 (M.D. Tenn. Feb. 22, 2007) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)) for the proposition that "'an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity,' and therefore, [is] not authorized under ERISA."  Plaintiff also relies on *Stellas v. BWXT Y-12, LLC, Group Long Term Disability Plan*, No. 3:04-CV-7, 2005 WL 2097796, at *12 (E.D. Tenn. Aug. 29, 2005) for the propositions that "an action to enforce a reimbursement provision in an ERISA plan is not cognizable under federal common law"; that "an action to enforce a reimbursement provision

in an ERISA plan is a legal action and, therefore, not recognizable [*sic*] under ERISA"; and that the court therefore "has no jurisdiction to adjudicate [a] counterclaim" of this nature.

The Court respectfully disagrees with plaintiff. As defendants note, plaintiff in *Lynch* was a plan participant who claimed that his benefits had been underpaid, and who attempted to bring an action to recover the benefits he claimed he was owed. *Lynch*, 2007 WL 622485, at *1, 4. The court held that "[i]nasmuch as the plaintiff is requesting monetary damages to recoup his reliance or his expectation interests in the defendant's original estimates [of his pension benefits], no such forms of relief are available to him under ERISA's statutory provisions." *Id.* at *4.

Here, by contrast, defendants seek recovery in equity pursuant to the terms of the LTD Plan in the amount that plaintiff has been overpaid. The Sixth Circuit has held that, "[a]s a fiduciary, [a plan] may, pursuant to 29 U.S.C. § 1132(a)(3), seek 'appropriate equitable relief' to redress violations of ERISA or to enforce the terms of the plan." *Med. Mut. of Ohio v. k. Amalia Enters.*, 548 F.3d 383, 389 (6th Cir. 2008). "[Section] 1132(a)(3)(B)," in addition, "could also authorize a fiduciary's action to enforce an 'equitable lien by agreement.'" *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 44 (6th Cir. 2007). Plaintiff's reliance on *Lynch*, given Sixth Circuit case law explicitly authorizing the sort of relief defendants seek, is thus inapposite.

Plaintiff's reliance on *Stellas* is also inapposite. The propositions for which plaintiff cites *Stellas*–that "an action to enforce a reimbursement provision in an ERISA plan is not cognizable under federal common law," and that "an action to enforce a reimbursement

provision in an ERISA plan is a legal action and, therefore, not recognizable [*sic*] under ERISA"– both spring from the Sixth Circuit's opinion in *Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 642, 650 (6th Cir. 2004). Those propositions were good law in 2005. In 2006, however, the Supreme Court "expressly abrogated" the Sixth Circuit's holding in *Qualchoice, Inc. See Longaberger Co. v. Kolt*, 586 F.3d 459, 466 n.4 (6th Cir. 2009); *see also Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 359 (2006) ("[A] fiduciary under . . . ERISA . . . may sue a beneficiary for reimbursement of . . . expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party."); *Reliance Standard Life Ins. Co. v. Smith*, No. 3:05-CV-467, 2006 WL 2993054, at * 2 (E.D. Tenn. Oct. 18, 2006) (relying on *Sereboff* in permitting the imposition of an equitable lien on assets traceable to an ERISA overpayment). Given that the case law upon which plaintiff's jurisdictional argument is based has been overruled, the Court rejects that jurisdictional argument, and finds that it does have jurisdiction to consider defendants' counterclaims for equitable relief. The Court now turns to the merits of those counterclaims.

### b.    Merits of Defendants' Counterclaims

As noted, defendants bring three counterclaims against plaintiff. Defendants first bring a counterclaim pursuant to 29 U.S.C. § 1132(a)(3) seeking imposition of an equitable lien, restitution, and a constructive trust [*see* Doc. 8, ¶¶ 6-17]. 29 U.S.C. § 1132(a)(3) provides that:

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Defendants contend that the lump sum payment made to plaintiff under the workers' compensation agreement resulted in an overpayment to plaintiff, and that defendants are therefore entitled to recover that overpayment under the terms of the LTD Plan [*Id.*, ¶¶ 11-12]. Defendants further contend that they have recovered a portion of the overpayment by applying offsets in accordance with the terms of the LTD Plan, but that some of the overpayment remains outstanding [*Id.*, ¶ 13].

For the reasons already set forth in this memorandum opinion, the Court finds that defendants may enforce the terms of the LTD Plan as written, and are therefore entitled under the terms of the LTD Plan to an equitable lien, restitution, and a constructive trust on the portion of the overpayment that remains outstanding. The Court will therefore grant judgment for defendants on the counterclaim that they have brought pursuant to 29 U.S.C. § 1132(a)(3).

Defendants next bring a counterclaim pursuant to 29 U.S.C. §§ 1132(a)(2) and 1104 for breach of fiduciary duty [*see id.*, ¶¶ 18-24]. 29 U.S.C. § 1132(a)(2) provides that a "civil action may be brought by . . . a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109 provides in relevant part that:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the

plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

29 U.S.C. § 1002(21)(A) provides that "a person is a fiduciary with respect to a plan to the extent . . . he . . . exercises any authority or control respecting management or disposition of [the plan's] assets."

In this case, plaintiff is a fiduciary with respect to the LTD Plan to the extent that he "exercises any authority or control respecting management or disposition of [the LTD Plan's] assets." *Id.*; *Gard v. Blankenburg*, 33 F. App'x 722, 727 (6th Cir. 2002); *see also Seaway Food Town Inc. v. Med. Mut.*, 347 F.3d 610, 616-17 (6th Cir. 2003) (internal citations omitted) ("ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . ."). The overpayment made by the LTD Plan to plaintiff is undoubtedly a plan asset. 29 U.S.C. § 1104, which identifies the duties a fiduciary has to an ERISA plan, thus imposes fiduciary duties on plaintiff with respect to that overpayment. Plaintiff, moreover, "shall be personally liable to make good to [the LTD Plan] any losses resulting from" a "breach[] [of] any of the . . . duties imposed upon fiduciaries" under ERISA. 29 U.S.C. § 1109.

To the extent that plaintiff continues to hold the overpayment for his own benefit, and has refused to return that overpayment to the LTD Plan, plaintiff is in breach of his fiduciary duty to the LTD Plan. Thus, for all of the reasons already set forth in this memorandum opinion, the Court finds summary judgment for defendants on their counterclaim for breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and 1104 to be appropriate.

Finally, defendants bring a counterclaim pursuant to federal common law for recovery of the overpayment to plaintiff [*see* Doc. 8, ¶¶ 25-30]. Defendants contend that plaintiff has been unjustly enriched by his retention of the overpayment, and thus seek the imposition of a constructive trust and a lien against the overpayment [*Id.*, ¶¶ 28-29]. As with defendants' first counterclaim, and for the reasons already set forth in this memorandum opinion, this Court finds the imposition of a constructive trust and a lien against the overpayment to be appropriate in this case. The Court will enter summary judgment for defendants on this counterclaim as well.

The Court next considers defendants' request for attorney's fees.

### c.    Attorney's Fees

Defendants also request an award of attorney's fees in connection with their counterclaims and pursuant to 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) provides that "[i]n any action under [§ 1132] . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In exercising their discretion under § 1132(g)(1), the Sixth Circuit requires district courts to consider the following factors in deciding whether to award attorney's fees:

(1)    The degree of the opposing party's culpability or bad faith;

(2)    The opposing party's ability to satisfy an award of attorney's fees;

(3)    The deterrent effect of an award on other persons under similar circumstances;

(4)    Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

(5)    The relative merits of the parties' positions.

*Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).

The Court finds plaintiff's "culpability" or "bad faith" in this action to be minimal. It finds plaintiff's ability to satisfy an award of attorney's fees to be lacking. It finds the deterrent effect of an award on other persons under similar circumstances to be mild. It finds that defendants did seek to confer a common benefit on all participants and beneficiaries of the ERISA plan in this case, but that defendants did not seek to resolve significant legal questions regarding ERISA. And it finds, finally, that while defendants' position was more meritorious than plaintiff's position, plaintiff's position was not entirely lacking in merit.

In sum, and after consideration of all of the above factors, the Court finds that an award of attorney's fees would not be appropriate in this case. The Court now considers plaintiff's vocational rehabilitation claim.

### 4.    Vocational Rehabilitation Efforts

Plaintiff contends that defendants have "dealt arbitrarily, capriciously, and in bad faith with respect to [plaintiff's] vocational rehabilitation efforts" [Doc. 23]. Plaintiff explains that, while he would like to participate in the vocational rehabilitation program administered in connection with the LTD Plan, it has been "financially and logistically impossible for him to do so" because defendants have withheld LTD Plan payments from him in their entirety [*see id.*].

The Court finds no merit in plaintiff's argument. As explained *supra* Part III.A, Sedgwick's decision to offset the entirety of plaintiff's monthly benefits under the LTD Plan was not arbitrary and capricious. The Court finds, moreover, that Sedgwick is under no duty to ensure that plaintiff receives some minimum level of benefits that will guarantee plaintiff's participation in the vocational rehabilitation program to which he refers.[8] The Court thus rejects plaintiff's vocational rehabilitation argument.

## IV. Conclusion

For the reasons above, plaintiff's Motion for Judgment on the Administrative Record [Doc. 25] will be denied. Defendants' Motion for Entry of Judgment [Doc. 21] will be granted. Defendants in this case are entitled to an equitable lien, restitution, and a constructive trust on the overpayment to plaintiff as described in this memorandum opinion.[9] This case will be dismissed. The clerk will be directed to close this case.

An order accompanying this memorandum opinion will be entered.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff provides no legal support for his vocational rehabilitation argument [*see* Docs. 23, 25].

[9] The Court finds defendants' proposed route to recovery–continuing to "reduce[] Plaintiff's LTD Plan benefits to zero until such time as the full Workers' Compensation Settlement is recovered"–to be appropriate in this case [*see* Doc. 22].